UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COLLINSVILLE POLICE PENSION BOARD On Behalf of the COLLINSVILLE POLICE PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVERY, INC., WARNER BROS. DISCOVERY, INC., DAVID ZASLAV, and GUNNAR WIEDENFELS,<br><br>Defendants. | Case No. 1:22-cv-08171<br><br>Hon. Valerie E. Caproni<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF WAYNE COUNTY EMPLOYEES'
RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL BACKGROUND | 2 |
| III. | STATEMENT OF FACTS | 3 |
| IV. | ARGUMENT | 7 |
| | a. Proposed Lead Plaintiff Should be Appointed Lead Plaintiff | 7 |
| |    i. The Procedure Required by the PSLRA | 7 |
| |    ii. Proposed Lead Plaintiff Has Complied with the PSLRA. | 9 |
| |    iii. Proposed Lead Plaintiff Has a Significant Financial Interest in the Relief Sought by the Class | 9 |
| |    iv. Proposed Lead Plaintiff Otherwise Satisfies the Requirements of Rule 23 | 10 |
| | b. The Court Should Approve Proposed Lead Plaintiff's Choice of Counsel | 11 |
| V. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**
*Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .... 10, 11
*In re AIG* ................................................................................................................................ 12
*In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372 (E.D. Va. 2003) ................................. 8
*In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206 (D.N.J. 1999) ............................................................ 7
*In re SLM Corp. Sees. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) .................................................. 8
*Lipetz v. Wachovia Corp.*, 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) .................................. 11
*Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ................................................................................................................................. 10
*Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019) ........................................................................................... 8

**Statutes**
15 U.S.C. § 78u4(a)(1) .................................................................................................................. 7
15 U.S.C. § 78u-4(a)(3)(A)(i) ....................................................................................................... 7
15 U.S.C. § 78u-4(a)(3)(A)(i)(II) .................................................................................................. 7
15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................................... 7, 9
15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................................... 2, 7
15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................................. 2, 8
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................................. 8
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................... 9
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ......................................................................................... 10
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................................... 8, 9, 11
15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 2, 11

**Rules**
Fed. R. Civ. P. 23(a) ................................................................................................................... 10
Fed. R. Civ. P. 23(a)(4) ............................................................................................................... 11

## I. INTRODUCTION

Movant Wayne County Employees' Retirement System ("WCERS" or "Proposed Lead Plaintiff") respectfully submits its Memorandum of Law in support of its motion for: (1) appointment as Lead Plaintiff in this action, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) approval of Proposed Lead Plaintiff's selection of The Miller Law Firm, P.C. ("Miller Law") as Lead Counsel for the Class (as currently defined herein); and (3) the granting of any such other and further relief as the Court may deem just and proper.

The above-captioned case is, to the best of Proposed Lead Plaintiff's knowledge, the only federal securities class action currently pending against Discovery, Inc. ("Discovery"), Warner Bros. Discovery, Inc. ("WBD" or the "Company"), David Zaslav ("Zaslav"), and Gunnar Wiedenfels ("Wiedenfels") (collectively, "Defendants")[1] asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") arising from the merger ("Merger") between Discovery, Inc. and the WarnerMedia division of AT&T, Inc. to form Warner Bros. Discovery, Inc. The contemplated Class currently consists of:

> [A]ll persons or entities who (1) exchanged Discovery common stock for WBD common stock pursuant or traceable to Discovery's February 4, 2022 Registration Statement on Form S-4 (the "Registration Statement") and Joint Proxy Statement/Prospectus filed with the SEC on February 10, 2022 (the "Prospectus"), or (2) purchased shares of WBD common stock on the open market traceable to the Prospectus through the date of the filing of this Complaint.

ECF No. 1 ("Collinsville Complaint" or "Complaint") at ¶ 1.

In securities class actions, the PSLRA requires district courts to appoint as lead plaintiffs the "member or members of the purported plaintiff class that the court determines to be most

---

[1] A companion case, *Todorovski, et al., v. Discovery, Inc., et al.*, Case No. 22-cv-9125 (S.D.N.Y.) was also filed in this District but has been consolidated with the present action. *See* ECF No. 19.

1

capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class and also whether such movant has made a prima facie showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Proposed Lead Plaintiff should be appointed Lead Plaintiff because: (1) Proposed Lead Plaintiff timely filed this motion; (2) Proposed Lead Plaintiff has a significant financial interest in the relief sought by the Class; and (3) Proposed Lead Plaintiff's claims are typical of the claims of the Class and they will fairly and adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Proposed Lead Plaintiff has extensive experience serving as a fiduciary and is a sophisticated institutional investor with a real financial interest in the litigation, providing assurance that it has both the incentive and ability to supervise and monitor counsel. Further, Proposed Lead Plaintiff fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and is willing and able to undertake the responsibilities necessary in acting as Lead Plaintiff to guarantee vigorous prosecution of this action. The Proposed Lead Plaintiff has selected The Miller Law Firm, P.C. ("Miller Law") as Lead Counsel for the Class. Miller Law has substantial experience in successfully prosecuting securities class actions and has the resources to efficiently prosecute this action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Accordingly, Proposed Lead Plaintiff respectfully requests that the Court appoint it as Lead Plaintiff, appoints its selection of counsel as Lead Class Counsel, and otherwise grants its motion.

## II. PROCEDURAL BACKGROUND

On September 23, 2022, the above-captioned action was filed by the Collinsville Police Pension Board, on behalf of the Collinsville Police Pension Fund ("Plaintiff"). ECF No. 1. On

September 27, 2022, counsel for Plaintiff published a notice of pendency of this action on *Business Wire*, (Declaration of Sharon S. Almonrode ("Almonrode Decl."), Ex. A), advising members of the proposed Class of their right to move this Court to serve as lead plaintiff by November 22, 2022.

**III.    STATEMENT OF FACTS**

Though the facts underlying the claims at issue are fully set out in Plaintiffs' Complaint (ECF No. 1), the Proposed Lead Plaintiff reiterates the following:

Prior to the Merger of WarnerMedia and Discovery, WarnerMedia was organized by AT&T as a global media and entertainment business. Complaint, ¶ 27. WarnerMedia develops, produces and acquires feature films, television, gaming and other content for monetization in various media outlets including theatrically, its own and third-party basic and premium Pay-TV, free-to-air television, direct-to-consumer services, live events and physical/digital retail. *Id*. In 2020, WarnerMedia generated $28.1 billion of revenue globally. *Id*. *citing* Prospectus at 112. That revenue consisted in substantial part of subscription revenue, advertising revenue, content sales, and related party revenue. *Id*.

Prior to the Merger, Discovery was a global media company that provided content across multiple distribution platforms, including linear platforms such as pay-television, free-to-air and broadcast television, content licensing arrangements and direct-to-consumer subscription products, including discovery+. Complaint, ¶ 32. Discovery provided original and purchased content and live events to approximately 3.7 billion cumulative subscribers and viewers worldwide through networks that it wholly or partially owned. *Id*. *citing* Prospectus at 28.

On May 17, 2021, prior to the opening of trading on the U.S. securities markets, AT&T and Discovery issued a joint press release announcing an agreement to combine WarnerMedia's "premium entertainment, sports and news assets with Discovery's leading nonfiction and

international entertainment and sports businesses to create a premier, standalone global entertainment company." Complaint, ¶ 36. That same day, the two companies convened a joint conference call with investors to discuss the proposed Merger.

Under the terms of the agreement, AT&T was to receive $43 billion from Discovery (subject to adjustment at closing) "in a combination of cash, debt securities and WarnerMedia's retention of certain debt." Complaint, ¶ 38. AT&T's shareholders were to receive stock representing 71% of the new company (WBD) formed by the merger of WarnerMedia and Discovery (based on a .241917 exchange ratio for each share of AT&T common stock outstanding). *Id*. Discovery common and preferred shareholders were to own 29% of the new company, and each Discovery common shareholder was to receive one share of WBD common stock (based on a one-to-one exchange ratio for each share of Discovery common stock owned). *Id*. The new company was subsequently named Warner Bros. Discovery, Inc. ("WBD"). Then-Discovery President and CEO David Zaslav was identified in the press release as "lead[ing] the proposed new company." Complaint, ¶ 43.

Both during and subsequent to the May 17, 2021, press release, Defendants touted the purported 'synergies' between WarnerMedia and Discovery that the Merger would achieve, resulting in—according to Defendants—considerable cost savings and additional value for investors. *See* Complaint, ¶¶ 50-53.

On November 18, 2021, Discovery filed with the SEC its initial Registration Statement and Joint Proxy Statement/Prospectus for the upcoming transaction, which contained projections for both Discovery and WarnerMedia. Complaint, ¶ 54. Over the next three months, Discovery filed amended versions of that document until the Amendment No. 3 to Form S-4 Registration Statement and definitive Joint Proxy Statement/Prospectus was filed on February 4, 2022. *Id*. The

amended Registration Statement was signed by Defendants Zaslav and Wiedenfels. Complaint, ¶ 55. The Registration Statement was declared effective by the SEC on February 10, 2022, and the final Joint Proxy Statement/Prospectus was filed with the SEC that same day. Complaint, ¶ 57.

In the Prospectus, Defendants claimed to have done significant due diligence and to have great familiarity with the operations of WarnerMedia prior to filing the Prospectus with the SEC. Complaint ¶ 80 (*citing* Prospectus at 179, 182, 184, 186, 193 and 212). Investors expected no less, given the substantial investment that Discovery was making in the Merger. *Id*. Moreover, the Defendants stated on a February 24, 2022, conference call that they were continuing to have high level communications with WarnerMedia management and were confident in the continuing truth of the information previously disclosed by investors. *Id*. The adverse information disclosed to WBD after the closing of the Merger was information fundamental to WarnerMedia's operations that either was known to Defendants, or should have been known to Defendants if their statements with respect to due diligence, familiarity with WarnerMedia's operations, and continuing high level communications with WarnerMedia management were true. *Id*.

On March 11, 2022, Discovery shareholders—as of the January 18, 2022, record date—overwhelmingly voted to approve the Merger. The Merger subsequently closed on April 8, 2022, and WBD began trading on the NASDAQ on April 11, 2022. Discovery shares closed on April 8, 2022, the last trading day as a public company, at $24.47. WBD common stock closed on April 11, 2022, its first day as a public company, at $24.78. Complaint, ¶¶ 81-84.

As subsequent events demonstrated, at the time of the February 24, 2022 conference call, either Discovery and/or the Individual Defendants did not have access to meaningful information concerning WarnerMedia's business transactions, and therefore were negligent in confirming financial information, or alternatively, Discovery and the Individual Defendants did have access

5

to meaningful information concerning WarnerMedia's business transactions, and therefore were negligent in confirming financial information. Complaint, ¶ 77. The statements made by Defendants in the Registration Statement and Prospectus, and on the February 24, 2022, conference call were, ultimately, untrue statements of material fact or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading because, among other things, they misrepresented and omitted material adverse facts with respect to WarnerMedia. Complaint, ¶ 78.

Among the material adverse facts Defendants expressed to WBD shareholders after the closing of the Merger, but were known or knowable to Defendants at the time the statements articulated in Plaintiff's Complaint were made, were that (i) WarnerMedia's HBO Max streaming business had an unacceptable churn rate that made the business not "viable" unless reversed; (ii) WarnerMedia was overinvesting in entertainment content for streaming, without sufficient concern for return on investment; (iii) WarnerMedia had a business model to grow the number of subscribers to its streaming service without regard to cost or profitability; (iv) WarnerMedia was improvidently concentrating its investments in streaming and ignoring its other business lines; and (v) WarnerMedia had overstated the number of subscribers to HBO Max by as many as 10 million subscribers, by including as subscribers AT&T customers who had received bundled access to HBO Max, but had not signed onto the service. Complaint, ¶ 79 (*citing* Complaint, ¶¶ 91, 92, 97-99, 104-107).

All told, in view of the foregoing and as a consequence of WBD's poor financial performance since the Merger, WBD common shares have fallen by $12.99 (or 52.4%) from $24.78 per share on April 11, 2022, to $11.79 on September 23, 2022—the last trading day prior to the filing of Plaintiff's Complaint. Complaint, ¶¶ 109-110.

## IV. ARGUMENT

### a. Proposed Lead Plaintiff Should be Appointed Lead Plaintiff

#### i. The Procedure Required by the PSLRA

The PSLRA establishes the procedure for the appointment of lead plaintiffs in "each private action arising under [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u4(a)(1) and (a)(3)(B)(i). First, the pendency of the action must be publicized in a widely-circulated, national, business-oriented publication or wire service within 20 days from the date on which the first complaint is filed, informing class members of their right to file a motion for appointment as lead plaintiffs. 15 U.S.C. § 78u-4(a)(3)(A)(i). Notice was published via *Business Wire* on September 27, 2022 (Almonrode Decl., Ex. A), within 20 days of the filing of the first complaint. *See, e.g., In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 216 (D.N.J. 1999) ("The *Business Wire* has been recognized as a suitable vehicle for satisfying the notice and publication requirements of the PSLRA.")

Second, within 60 days after publication of the first notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiffs, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). That period of time expires on November 22, 2022.

Third, the PSLRA provides that, within 90 days after the publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiffs the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).

In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –

7

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 and the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). In adjudicating a lead plaintiff motion, the court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also, Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019) (addressing qualifications for appointment of lead plaintiff).

The Court may also consider other factors in addition to the size of the loss. *See, e.g., In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("[A] Proposed Lead Plaintiff's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class"). These additional considerations include whether under Rule 23, the candidate is a typical and adequate representative. *Id. see also, In re SLM Corp. Sees. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) ("Under the PSLRA, a proposed lead plaintiff must, inter alia, make a preliminary showing that it satisfies the typicality and adequacy requirements of FRCP. 23").

### ii. Proposed Lead Plaintiff Has Complied with the PSLRA.

Pursuant to the PSLRA, Proposed Lead Plaintiff has timely moved to be appointed Lead Plaintiff on behalf of all members of the Class within the requisite time frame. Proposed Lead Plaintiff has duly signed and filed certifications attesting that it is willing to serve as a class representative. *See* Almonrode Decl., Ex. B. In addition, the Proposed Lead Plaintiff has selected and retained experienced and competent counsel to represent it and the Class. *See* Almonrode Decl., Ex. C.

Accordingly, Proposed Lead Plaintiff has fulfilled the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of its choice of Lead Counsel, as set forth herein, considered and approved by the Court.

### iii. Proposed Lead Plaintiff Has a Significant Financial Interest in the Relief Sought by the Class

In determining the "most capable plaintiff" the court must be guided by a presumption that the most adequate plaintiff is the class member that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). This presumption may be rebutted, however, by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As evidenced by the attached certification (Almonrode Decl., Ex. B), Proposed Lead Plaintiff acquired tens of thousands of shares of WBP common stock during the Class Period and suffered significant financial harm as a result of the alleged wrongdoing. Proposed Lead Plaintiff has a substantial financial interest in this case and, accordingly, is well-suited to serve as Lead Plaintiff.

### iv. Proposed Lead Plaintiff Otherwise Satisfies the Requirements of Rule 23

To serve as Lead Plaintiff, the Proposed Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the claims of class representatives, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Typicality and adequacy of representation are the only provisions relevant to the selection of lead plaintiffs under the PSLRA. *See, e.g., Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *4 (S.D.N.Y. Sept. 17, 2018) ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met") (citation and internal quotations omitted). Both typicality and adequacy are readily met in this instance.

Regarding typicality, the Proposed Lead Plaintiff's claims are typical of those of the Class. Typicality is satisfied where the movant's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *6 (S.D.N.Y. Mar. 7, 2016) (citation omitted). Proposed Lead Plaintiff suffered the *same* injuries as all members of the Class stemming from the *same* course of events, and therefore their legal arguments to prove Defendants' liability are substantively identical. Like all other Class members, Proposed Lead Plaintiff: (i) purchased or acquired WBD common stock during the Class Period; (ii) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (iii) were damaged as a result. *See id.* (typicality satisfied where movant purchased "shares at artificially inflated prices during the class period, and

were injured by the false and misleading statements and omissions made by defendants in violation of federal securities laws"). Accordingly, Proposed Lead Plaintiff satisfies the typicality requirement of Rule 23.

Regarding adequacy, Rule 23 is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the interests of the Class to be fairly and adequately represented, the movant must show that: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Vale*, 2016 WL 880201 at *6 (citation omitted). The Proposed Lead Plaintiff meets these elements, as it has a substantial financial stake in the litigation and has retained experienced counsel to vigorously represent the Class's claims. *See Lipetz v. Wachovia Corp.*, 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would "vigorously" prosecute claims on behalf of the class). Moreover, there is no actual or potential conflict of interest or other antagonism between Proposed Lead Plaintiff and other members of the putative Class. Similarly, upon information and belief, Proposed Lead Plaintiff is not "subject to unique defenses that render such plaintiff incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Proposed Lead Plaintiff meets all adequacy requirements.

### b. The Court Should Approve Proposed Lead Plaintiff's Choice of Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), lead plaintiff shall, subject to approval of the Court, select and retain counsel to represent the class it seeks to represent. Proposed Lead Plaintiff has retained Miller Law to serve as Lead Counsel for the Class. *See* Almonrode Decl., Ex. C.

Miller Law has extensive experience successfully prosecuting and serving as lead counsel in a range of highly complex securities fraud class actions, both in state and federal court. By way of example, Miller Law was co-lead counsel in *In re AIG 2008 Securities Litigation*, C.A. 08-CV-4772 (S.D.N.Y.) which was the highest securities fraud class action settlement in the United States in 2015. The Court may be confident that the Class will receive the services of a firm that has provided clients in securities class actions with the highest possible quality of legal representation. The Miller Law Firm, P.C. has over 20 years of experience in successfully prosecuting complex securities actions and has frequently served in a leadership position in such matters. *See generally*, Almonrode Decl., Ex. C.

Proposed Lead Plaintiff's choice of counsel will fairly and adequately represent the Class and, accordingly, this Court should appoint Proposed Lead Plaintiff as Lead Plaintiff and approve Proposed Lead Plaintiff's selection of The Miller Law Firm as Lead Counsel for the Class.

## V. CONCLUSION

For the foregoing reasons, WCERS respectfully requests that the Court: (1) appoint it as Lead Plaintiff in this action; (2) approve its selection of The Miller Law Firm as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 22, 2022 | Respectfully submitted,<br><br>*/s/ Sharon S. Almonrode*<br>E. Powell Miller<br>Sharon S. Almonrode<br>**THE MILLER LAW FIRM, P.C.**<br>950 W. University Dr., Suite 300<br>Rochester, MI 48307<br>Tel: (348) 841-2200<br>Fax: (248) 652-2852<br>epm@millerlawpc.com<br>ssa@millerlawpc.com |

*Counsel for Movant &  
[Proposed] Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2022, I electronically filed the foregoing papers using the ECF system which will send electronic notices of same to all counsel of record.

*/s/ Sharon S. Almonrode*
Sharon S. Almonrode